## 11361

### STATE v. MAES

#### (120 S. E., 576)

1. CRIMINAL LAW—COURT NOT LIMITED TO PROOF OF CONVICTION IN DETERMINING WHETHER CONDITION OF SUSPENDED SENTENCE VIOLATED.—Where part of a sentence for violating the prohibition law was suspended unless and until the Court shall conclude "upon an investigation thereof in such manner as it shall deem proper" that defendant has again violated a prohibition law, the Court is not limited to proof of a regular conviction under constitutional guaranties in determining whether the condition of the sentence has been violated.

2. COURTS—RESPONDENT ARGUING MERITS ON MOTION TO SHOW CAUSE CANNOT OBJECT TO COURT'S JURISDICTION.—Where respondent in a formal rule to show cause makes return thereto and is heard on the merits, he cannot object to the Court's jurisdiction.

3. JURY—RESPONDENT IN RULE TO SHOW CAUSE NOT ENTITLED TO JURY TRIAL.—A respondent in a formal rule to show cause is not entitled to a jury trial.

4. CRIMINAL LAW—EVIDENCE SECURED BY SEARCH WITHOUT WARRANT ADMISSIBLE WHERE OFFICERS SAW SALE.—Where an officer saw defendant sell liquor no search warrant is necessary to make evidence obtained by a search of the premises admissible.

Before MENDEL L. SMITH, SPECIAL JUDGE, Charleston, February, 1923. Affirmed.

Oscar Maes was convicted of violating the prohibition law, and part of the sentence was suspended on condition. From an order adjudging that the condition of the suspended sentence had been violated, defendant appeals.

The decree of Circuit Judge Mendel L. Smith follows:

On the 21st day of June, 1916, the respondent, Oscar Maes, was convicted by a jury in the Court of General Sessions for the County of Charleston, under three counts, of a violation of what is generally known as the Prohibition Law (Cr. Code S. C., 1922, §§ 820–888).

Upon this verdict the sentence and judgment of the Court was pronounced upon him at the bar thereof on the 22d

day of June, 1916, by Hon. R. W. Memminger, presiding Judge, as follows:

"It is the judgment and sentence of the Court that the within named defendant, Oscar Maes, be confined at hard labor upon the public works of the County of Charleston for a term of six months, or for a like term at hard labor in the State Penitentiary.

"It is further ordered and adjudged, however, that four months of the sentence herein pronounced be, and the same is, hereby suspended upon the conditions hereinafter imposed, that is to say, upon the payment to the Clerk of the Court of said County of the sum of seventy-five ($75.00) dollars, or a service of a term of two months, at hard labor, on the public works of the County of Charleston, or a like period, at hard labor, in the State Penitentiary, and upon the futher express condition that the within named Oscar Maes shall not in any way violate any of the laws of this State, or municipal ordinances, relating to alcoholic liquors, whether of a regulative or prohibitive nature, either directly or indirectly, or through the means of any form of agency, copartnership, or any other form or method of business, so designed, and shall not in any manner use, or knowingly become a party to the use of, any premises, or engage in any manner or form in any business whereby such laws or ordinances shall be violated; and in the event that it shall be brought to the attention of the Court that such terms and conditions, or any of them, are not being observed, and the Court shall, upon an investigation thereof in such manner as shall to it seem proper, conclude that the terms and conditions as hereinabove set forth have been in ·whole or part violated, then the suspension of sentence as herein imposed shall thereupon immediately cease and the within named Oscar Maes shall forthwith suffer and undergo the sentence of the Court as above imposed, that is to say, shall be confined at hard labor upon the public works of the County of Charleston for the remainder of the said term, namely,

four months, or for a like period in like manner, in the State Penitentiary."

The defendant accepted the terms and conditions therein embodied by the payment of the fine and there is nothing on record in the office of the Clerk of Court of the County of Charleston to show that he has ever been pardoned of such violation of the law.

That on the 13th day of February, 1923, the Honorable Thomas P. Stoney, Solicitor of the Ninth Circuit, officially brought to the attention of the Court, by the presentation of several affidavits, that the terms and conditions of the said sentence were not being observed, and thereupon obtained a rule against the respondent to show cause on the 16th day of Februray, 1923, why he should not be ordered to begin forthwith the service of the suspended part of said sentence.

In his return to the rule and objections to certain testimony adduced at the hearing the respondent contends: (a) That under the language contained in this sentence, when properly interpreted, the Court is limited in determining whether the terms and conditions thereof have been violated to proof of a conviction, under constitutional guarantees, of a violation of law; (b) that any other judicial finding for the determination of this question would be violative of his rights under the Fifth Amendment to the Federal Constitution, and Article 1, § 17, of the State Constitution; (c) that substantially all of the incriminating evidence submitted at the hearing was obtained by, and under the direction of Federal officers, in an unauthorized search of respondent's house, in violation of the search and seizure and compulsory self-incrimination clauses of the Federal (Fourth and Fifth Amendments) and State (Article 1, §§ 16 and 17) Constitution, and should be excluded; (d) that if there was a violation of the said terms and conditions, such offense was incited and created by officers of the law for the sole purpose of prosecuting and punishing it,

and, therefore, should not be regarded as a violation of the terms and conditions of the said sentence; (e) that a Federal Grand Jury, acting upon the same state of facts, has returned no bill on an indictment charging the respondent with the offense of interfering with officers in the discharge of their duty; and (f) that the testimony, if considered, is not sufficient to show a violation of the terms and conditions of the said sentence.

At the hearing in open Court, the State and respondent offered witnesses, including the respondent himself, who were regularly sworn, examined and cross-examined.

A brief statement, in substance, of the testimony offered by the State is as follows:

It was reported to the officers that the respondent was selling whiskey. On the night of April 21, 1922, Tom Williams and O. B. Seabrook, Federal prohibition officers, State Agent Parker and Robert Meyers, a car repairer in the service of the Atlantic Coast Line Railroad Company, visited the respondent's place of business in North Charleston, not a great distance from the Navy Yard on the road leading from the Meeting Street road, to ascertain, if possible, the correctness of this report. Meyers was asked to accompany the officers through apprehension that the latter would be recognized and that no sale would be made to them for obvious reasons. Meyers stated that he had bought whiskey from the respondent on previous occasions, knew him well, and that he used his own funds on the occasion in question; that his action was purely voluntary and that he had no agreement with the officers for any compensation, nor was it understood that he should receive any; that he was largely prompted to render this assistance "because every time a decent lady went into his (respondent's) place he would insult her."

It was understood between the parties that Meyers would go in to make the purchase and when this was consummated and the liquor was actually produced, Williams,

who was looking through the glass from the outside and could see everything that was happening, was to give a signal to Seabrook, who, in turn, would rush in and seize the liquor. Pursuant to this prearranged plan, Meyers went into the store, which was open for business, told the respondent what he wanted and purchased from him a quart of corn liquor, contained in coco-cola bottles, whereupon Meyers gave him in payment his check for the sum of $4.00, which the respondent at first refused to accept until assured by a mutual friend that it was good. When respondent delivered the whiskey to Meyers, the latter set the bottles on the counter and almost immediately hereafter Williams gave the agreed signal.

He and the others rushed into the store (Parker is no longer in the service of the State), the respondent became very angry and boisterous and broke several bottles containing corn liquor on the cement floor of the building, including the ones which he had delivered to Meyers. Williams then asked the respondent for the check given him by Meyers, which the respondent first denied having, but afterwards produced from his pocket, and, in the presence of the officers, tore it into pieces and threw them on the floor. Williams gathered the pieces of this check, placed them in a sealed envelope and kept them in a desk drawer in the postoffice building for several months. For the purpose of this hearing, these pieces were assembled in the office of the Solicitor, so arranged and pasted on paper as to reproduce the check, which was offered in evidence, as a part of the record in this proceeding. Thereafter a warrant was sworn out by one of the Federal officers against the respondent charging a violation of the Federal prohibition law, and is now pending for trial in the Federal Court. The grand jury did not find a bill on the indictment charging him with an unlawful interference with officers in the discharge of their duties growing out of the same transaction.

The testimony presented by the respondent is substantially as follows:

Eighteen years ago he came over here as an immigrant on the Wittekind. About seven years ago he paid a fine of $75.00 in Court for selling liquor. He was not present when the case was tried, but was sent for and paid his fine. He knew Meyers by face only. When Meyers came into his store that night, he (Meyers) said he had a quart of good liquor he wanted to sell him, but respondent told him he was not fooling with whiskey. Meyers said, however, "Come on and let me give you a drink," and pulled out a half-pint bottle and handed it to respondent. Before that, Meyers had placed two bottles on the counter. He then gave respondent a drink, who went in the ice box to get a soft drink because he had to have a soft drink as a "chaser." Meyers then grabbed the soft drink out of his hand and ran and the officers came in. Williams grabbed respondent, who was just serving a customer and put him under arrest. Mr. Routh, who was present at the time, asked Williams if he would allow respondent to figure up his account as he wished to pay it and go home. Williams assented. Respondent saw the package on the counter and knew it was whiskey and broke it. That was all there was to it. Two bottles were brought in. Respondent smashed the bottle he was drinking from, and later on saw the two bottles on the counter which he also smashed. He never tore up any check and did not know anything about it.

The questions presented for consideration will now be discussed in the order in which they have been stated, and attention will, therefore, be directed first to the question as to whether the Court is limited to a proof of conviction of a violation of the law in determining whether the terms and conditions of the sentence have been violated.

In the submitted argument of the learned counsel for the respondent it is admitted that "the right of Judge Memminger to suspend sentence is not questioned. The direct point

at issue is the construction of the language in which the suspending conditions are phrased. Whatever may be the legal construction of the words used, it is conceded binds the respondent."

If, then, the sole question presented on this phase of the case is as to the meaning of the able Judge who pronounced this judgment, much of the difficulty is removed.

An analysis of this sentence clearly discloses the following elements: (1) The sentence or judgment proper imposing an imprisonment of six months in the State Penitentiary or on the County chaingang. (2) A suspension of a part thereof, namely, four months, upon the express conditions (a) of a service of a part thereof, namely, the period of two months; or (b) the payment of a fine of $75; and (c) of an observance of the law relating to intoxicating liquors, either of a regulative or prohibitive character. (3) A revocation of the suspension of sentence (a) when the nonobservance or violation of such laws is brought to the attention of the Court, and (b) the Court shall conclude that the terms and conditions have been in whole or in part violated "upon an investigation thereof in such manner as shall seem proper."

While the cases of *State v. Mappus,* 107 S. C., 345; 92 S. E., 1053. *State v. Teal,* 108 S. C., 455; 95 S. E., 69. *State v. Danhauer,* 109 S. C., 406; 96 S. E., 93, and *State v. Strauss,* 114 S. C., 445; 103 S. E., 769, as contended by the respondent, may not be directly in point with regard to the particular question under consideration, it is perfectly obvious to the Court that this question must be determined against the respondent's contention under the principles announced and the analogies afforded in the cases of the *State v. Charles,* 107 S. C., 413; 93 S. E., 134, and the very recent case of the *State v. Miller* (S. C.) 115 S. E., 744.

In the case of *State v. Miller, supra,* at page 744, the Court says: "There can be no doubt that sound practice

requires that proceedings against a party charged · with violating the conditions of a suspended sentence should, as a general rule, be commenced by and based upon information under [which was fully complied with in the case under consideration] oath. But a Court having jurisdiction to render a judgment has inherent authority to carry such judgment into effect. Hence the jurisdiction of the Court of General Sessions to enforce or carry into effect a suspended judgment or sentence * * * *is in no wise dependent upon the form of the process that brings the party subject to such outstanding sentence before the Court."* (Italics added.)

It is also well settled that if the defendant is made respondent in a formal rule to show cause, makes return thereto, is heard on the merits by himself or counsel, or both, he cannot object to the jurisdiction of the Court. *State v. Miller, supra,* citing *State v. Chancellor,* 32 S. C. Law (1 Strob.), 347; 47 Am. Dec., 557. *State v. Charles, supra,* 16 C. J., p. 1335, § 3141. Nor is he entitled to a trial by a jury. *State v. Charles, supra; State v. Miller, supra.*

In the latter case, 115 S. E., 745, the Court very clearly states the power of the trial Court in such proceedings in the following language: "Upon that issue, in the case of *State v. Charles, supra,* this Court expressly held that a defendant was not entitled to a jury trial. The nature of the inquiry and extent of the investigation to be conducted by the Court of General Sessions in determining whether the condition of a suspended sentence has been violated are matters that rest in the sound discretion of that Court. *People ex rel. Forsyth v. Monroe County Court of Sessions,* 141 N. Y., 288; 36 N. E., 386; 23 L. R. A., 856. But where the suspension is upon conditions expressed in the sentence imposed, the prisoner has a right to rely upon such conditions, and so long as he complies therewith the suspension should stand. It follows that the authority of the

Court of General Sessions to revoke such suspension of sentence may not be capriciously or arbitrarily exercised, but should always be predicated upon an evidentiary showing of fact tending to establish violation of the conditions Since, however, this Court's authority to review the findings of a lower Court upon such an issue is confined to the correction of errors of law, unless it appears that the action of the Circuit Court was influenced or controlled by some erroneous view of the law, or was wholly without evidence to support it (a judicial determination wholly without a supporting basis of fact being error of law), or amounted to a manifest abuse of discretion, a finding of fact by the Court of General Sessions as to a breach of the conditions of a suspended sentence is final."

It is, therefore, beyond question that no valid objection can be urged against the process used in this case, or to the jurisdiction of the Court to hear this proceeding vitally affecting the execution of its judgment, or to the adoption by the Court of a method of investigation which denied to the respondent the right of a trial by jury. It then remains to be seen if, in such investigation, the Court is limited to proof of a regular conviction, under constitutional guarantees, of a violation of the law, either Federal, State or Municipal.

It is clear that if "it is conceded" that a proper "construction of the words used" in this sentence "binds the respondent," it was far from the purpose of the learned Judge to so limit the proof of a violation of the terms and conditions of this sentence. Without any extended discussion, it is sufficient to observe that the provision for an "investigation" of the question "in such manner" as shall appear to the Court "proper," certainly contemplates a more extended inquiry, if such should be necessary, than the mere reception of a record of conviction. It is quite true that in the cases of *State v. Charles, supra,* and *State v. Miller, supra,* there had been convictions, but the language last quoted

above from the latter case unquestionably indicates that the Circuit Judge would not be so limited in his investigation.

When the Court declares that "the nature of the inquiry and extent of the investigation to be conducted" by the Court in determining whether or not the conditions of a suspended sentence have been violated must rest in the "sound discretion of the Court," and that the revocation of such suspension of sentence "should always be predicated upon an evidentiary showing of fact tending to establish violation of the conditions," and that "a finding of fact by the Court of General Sessions as to a breach of the conditions of a suspended sentence is final," except when exercised "capriciously or arbitrarily," or amounts to a "manifest abuse of discretion," or is "wholly without a supporting basis of fact," it is impossible to escape the conclusion that the Court sanctions a much broader investigation than would be necessarily involved in a simple inquiry as to whether the defendant has been legally convicted of some offense, which always admits of easy, certain proof and leads to but one conclusion.

It must also be observed that the "investigation" contemplated in this sentence is not for the purpose of inflicting legal punishment upon the party for the violation of the law. Such a result could only be secured after a trial surrounded by every statutory and constitutional safeguard. The sole inquiry by the Court is to determine whether the remaining part of a sentence and judgment of the Court imposed for the commission of a past offense must be executed and for which the defendant has been legally tried and convicted in a Court of competent jurisdiction with every safeguard. As is well and concisely stated by Mr. Justice Fraser in *State v. Charles, supra,* "no new penalty is affixed or a new sentence is given." The real question presented is not one involving the denial of constitutional guarantees relating to a trial for a public wrong, but the exercise by the Court of its inherent power to enforce an ex-

isting judgment. As was well said by our Court in the case of *State v. Miller, supra,* quoting from the old case of *State v. Chancellor, supra,* when a defendant stands before the Court again in such an inquiry it is practically the same as if he "had never been out of the custody of the Sheriff."

The weakness of the respondent's contention lies largely in a failure to observe this distinction. As the defendant becomes the beneficiary of the suspended sentence, he must be bound by its conditions. These views dispose of the first and second questions above stated.

The next contention of the respondent presents the question as to whether the admission of practically all of the incriminating testimony offered by the State should be excluded as in violation of the search and seizure and self-incrimination clauses of the State and Federal Constitutions.

The Court has availed itself of this opportunity to make an investigation, as far as time at its disposal would permit, of this interesting question, which has been recently made the subject of constant consideration by the Courts of the country, and to state briefly some of the propositions sustained by the numerous cases upon the subject.

It seems to be well settled that the Fourth Amendment to the Federal Constitution (relating to search and seizure) has no application to the State and is only operative on the Federal Government and its agencies. *Ex parte Spies,* 123 U. S., 131; 8 Sup. Ct., 22; 31 L. Ed., 86. *Ohio v. Dollison,* 194 U. S., 447; 24 Sup. Ct., 703; 48 L. Ed., 1065. *Twining v. New Jersey,* 211 U. S., 78; 29 Sup. Ct., 14; 53 L. Ed., 97. *National Deposit Company v. Stead,* 232 U. S., 58; 34 Sup. Ct., 209; 58 L. Ed., 504. *Weeks v. United States,* 232 U. S., 383; 34 Sup. Ct., 341; 58 L. Ed., 652; L. R. A. 1915B, 834; Ann. Cas. 1915C, 1177. *Burdeau v. McDowell,* 256 U. S., 465; 41 Sup. Ct., 574; 65 L. Ed., 1048; 13 A. L. R., 1159. *Kanellos v. United States* (C. C .A.) 282 Fed., 461, decided July, 1922, overruling

*Dukes v. United States* (C. C. A.) 275 Fed., 142. *United States v. Falloco* (D. C. W. D., Mo.) 277 Fed., 75. *Johnson v. State,* 152 Ga., 271; 109 S. E., 662. *State v. Campbell,* 182 N. C., 911; 110 S. E., 86. *State v. Atkinson,* 40 S. C., 363; 18 S. E., 1021; 42 Am. St. Rep., 877. *State v. Harley,* 107 S. C., 304; 92. S. E., 1034; that while it is generally conceded that the constitutional inhibition against unreasonable searches and seizures is to place a very salutary restriction upon the powers of the government, and that an officer exceeding his authority in such cases, or proceeding upon an illegal warrant, or without warrant, would, in an appropriate action or proceeding, be held legally responsible for his wrong, yet it was the rule in the Federal Courts, certainly at one time, *Adams v. New York,* 192 U. S., 585; 24 Sup. Ct., 372; 48 L. Ed., 579, repudiating in 1904 a contrary doctrine announced in *Boyd v. United States,* 116 U. S., 616; 6 Sup. Ct., 524; 29 L. Ed., 746. *Hale v. Henkel* 201 U. S., 43; 26 Sup. Ct., 370; 50 L. Ed., 652. *Holt v. United States,* 218 U. S., 245; 31 Sup. Ct., 2; 54 L. Ed., 1021; 20 Ann. Cas., 1138. *Bacon v. United States,* 97 Fed., 35; 38 C. C. A., 37. *United States v. Bateman* (D. C. S. D. Cal.) 278 Fed., 231. *United States v. Wilson* (C. C. S. D. N. Y.), 163 Fed., 338. *U. S. v. Snyder* (D. C. W. D. W. Va.), 278 Fed., 650. *State v. Garrett,* 71 N. C., 85; 17 Am. Rep., 1; and the almost universal rule in the State Courts, *Chastang v. State,* 83 Alabama, 29; 3 South., 304. *Shields v. State,* 104 Ala., 35; 16 South,. 85; 53 Am. St. Rep., 17. *Scott v. State,* 113 Ala., 64; 21 South., 425. *Starchman v. State,* 62 Ark., 538; 36 S. W., 940. *Benson v. State,* 149 Ark., 633; 233 S. W., 758. *People v. Alden,* 113 Cal., 264; 45 Pac, 327. *People v. Mayen,* 188 Cal., 237; 205 Pac., 435; 24 A. L. R., 1383. *State v. Griswold,* 67 Conn., 290; 34 Atl., 1047; 33 L. R. A., 227. *Williams v. State,* 100 Ga., 511; 28 S. E., 624; 39 L. R. A., 269. *McAllister v. State,* 17 Ga. App., 159; 86 S. E., 412. *Calhoun v. State,* 144 Ga., 679;

87 S. E., 893 (this case and others cited apparently adopt
again the doctrine declared in *Williams v. State, supra,*
after several intervening cases seemingly in conflict there-
with) ; *Martin v. State,* 148 Ga., 406; 96 S. E., 882.
*Hysler v. State,* 148 Ga., 409; 96 S. E., 884. *Groce v.
State,* 148 Ga., 520; 97 S. E., 525. *Johnson v. State,* 152
Ga., 271; 109 S. E., 662; 19 A. L. R., 641. *Kennemer v.
State,* 154 Ga., 139; 113 S. E., 551 (this case is plainly de-
claratory of the rule announced in *Williams v. State*).
*State v. Bond,* 12 Idaho, 424; 86 Pac., 43. *State v. An-
derson,* 31 Idaho, 514; 174 Pac., 124. *Stevison v. Earnest,*
80 Ill., 513. *Gindrat v. People,* 138 Ill., 103; 27 N. E.,
1085. *People v. Paisley,* 288 Ill., 310; 123 N. E., 573.
*State v. Schmidt,* 71 Kan., 862; 80 Pac., 948. *State v.
Renaud,* 50 La. Ann., 662; 23 South., 894. *State v. Gor-
ham,* 65 Me., 270. *Lawrence v. State,* 103 Md., 17; 63
Atl., 96. *Faunce v. Gray,* 21 Pick. (Mass.) 243. *Com.
v. Intox. Liquors,* 58 Vt., 593; 4 Atl., 229. *Com. v.
Welsh,* 110 Mass., 359. *Com. v. Taylor,* 132 Mass., 261.
*Com. v. Ryan,* 157 Mass., 403; 32 N. E., 349. *Com. v.
Hurley,* 158 Mass., 159; 33 N. E., 342. *Com. v. Welch,*
163 Mass., 373; 40 N. E., 103. *Com. v. Acton,* 165 Mass.,
11; 42 N. E., 329. *Com. v. Tucker,* 189 Mass., 457; 76
N. E., 127; *People v. Case,* 220 Mich., 379; 190 N. W.,
289 (this case in apparent conflict with the doctrine an-
nounced in cases of *People v. Manxhausen,* 204 Mich, 559;
171 N. W., 557; 3 A. L. R., 1505. *Newberry v. Car-
penter,* 107 Mich., 567; 65 N. W., 530; 31 L. R. A., 163;
61 Am. St. Rep., 346; and *People v. Margelis,* 217 Mich.,
423; 186 N. W., 488). State v. Hoyle, 98 Minn., 254;
107 N. W., 1130. *State v. Pomeroy,* 130 Mo., 489; 32
S. W., 1002. *State ex rel. Samlin v. District Court,* 59
Mont., 600; 198 Pac., 362. *State v. Reed,* 53 Mont., 292;
163 Pac., 477; Ann. Cas. 1917E, 783. *State v. Flynn,* 36
N. H., 64. *Younger v. State,* 80 Neb., 201; 114 N. W.,
170. *State v. Sawtelle,* 66 N. H., 488; 32 Atl., 831.

*People v. Adams* (same case as *Adams v. New York, supra*). *State v. Wallace,* 162 N. C., 622; 78 S. E., 1; Ann. Cas. 1915B, 423. *State v. Simmons,* 183 N. C., 684; 110 S. E., 591. *State v. McDaniel,* 39 Or., 161; 65 Pac., 520. *State v. Madison,* 23 S. D., 584; 122 N. W., 647. *Cohn v. State* (*Perkins v. State; Horton v. State*) 120 Tenn., 61; 109 S. W., 1149; 17 L. R. A. (N. S.), 451; 15 Ann. Cas., 1201. *Hughes v. State,* 145 Tenn., 544; 238 S. W., 588; 20 A. L. R., 639. *Rippey v. State,* 86 Tex. Cr. R., 539; 219 S. W., 463. *Moore v. State,* 87 Tex. Cr. R., 569; 226 S. W., 415. *State v. Mathers,* 64 Vt. 101; 23 Atl., 590; 15 L. R. A., 268; 33 Am. St. Rep., 921. *Barret v. Fish,* 72 Vt., 18; 47 Atl., 174; 51 L. R. A., 754; 82 Am. St. Rep., 914. *State v. Slamon,* 73 Vt., 211; 50 Atl., 1097; 87 Am. St. Rep., 711. *State v. Suiter,* 78 Vt., 391; 63 Atl., 182. *State v. Royce,* 38 Wash., 111; 80 Pac., 268; 3 Ann. Cas., 351. *State v. Douglass,* 20 W. Va. 770—that in the trial of a criminal case the court will receive any evidence, otherwise competent and pertinent, without pausing to make a collateral inquiry into the legality of the method or means by which it was obtained.

But a different rule now seems to prevail in the Federal Courts, *Boyd v. United States,* 116 U. S., 616; 6 Sup. Ct., 524; 29 L. Ed., 746. *Silverthorne Lumber Co. v. United States,* 251 U. S., 385; 40 Sup. Ct., 182; 64 L. Ed., 319. *Gouled v. United States,* 255 U. S., 298; 41 Sup. Ct.,261, 65 L. Ed., 647. *Honeycutt v. United States* (4 C. C. A.), 277 Fed., 939. *Woods v. United States* (4 C. C. A.), 279 Fed., 706. *United States v. Kraus* (D. C.), 270 Fed., 578. *United States v. Quaritius* (D. C.), 267 Fed., 227. *United States v. Slusser* (D. C.), 270 Fed., 818; and in several of the state jurisdictions, *Hammock v. State,* 1 Ga. App., 126; 58 S. E., 66 (this case and the next apparently overruled *Williams v. State, supra,* which, however, has been repudiated in subsequent

cases as already shown). *Underwood v. State,* 13 Ga.
App., 206; 78 S. E., 1103. *Youman v. State,* 189 Ky.,
152; 224 S. W., 860. *Bruner v. Com.,* 192 Ky., 386; 233
S. W., 795. *State v. Rowley* (Iowa), 187 N. W., 7.
*Sullivan v. Nicoulin,* 113 Iowa, 76; 84 N. W., 978.
*People v. Margelis,* 217 Mich., 423; 186 N. W., 488.
*Tucker v. State,* 128 Miss., 211; 90 South., 845; 24 A.
L. R., 1377. *State v. Gibbons,* 118 Wash., 171; 203 Pac.,
390 (apparently in conflict with *State v. Royce, supra*),
unless the alleged unlawful search and seizure were fol-
lowed by seasonable proceedings to determine the validity
thereof and obtain a return of the articles, *Weeks v. Uni-
ted States, supra. Rice v. United States* (1 C. C. A.),
251 Fed., 778; 164 C. C. A., 12. *Laughter v. United
States* (6 C. C. A.), 259 Fed., 94; 170 C. C. A., 162.
*Youngblood v. United States* (8 C. C. A.), 266 Fed., 795.
*Haywood v. United States* (7 C. C. A.), 268 Fed, 795.
*Fitter v. United States* (2 C. C. A.), 258 Fed., 567; 169
C. C. A., 507; which motion, however, for the return of
such articles may be made at trial when the knowledge
of their possession is then first acquired. *Amos v. United
States,* 255 U. S., 313; 41 Sup Ct., 266; 65 L. Ed., 654;
nor does the rule declaring the illegality of the means by
which the articles are obtained to be immaterial for the
purpose of evidence apply to the determination of an ap-
plication for the return of the articles, *United States v.
Friedberg* (D. C. E. D. Pa.), 233 Fed., 313. *In re Coal
& Coke Co.* (D. C. W. D. Pa.), 253 Fed., 605.

It is also well settled that the rule excluding such evi-
dence does not apply where the evidence thus unlawfully
obtained by state officers is offered in the Fed-
eral Courts: *Weeks v. United States, supra. Bur-
deau v. McDowell, supra. Rice v. United States, supra.
Youngblood v. United States, supra. Herine v. United
States* (9 C. C. A.), 276 Fed., 806. *Kanellos v. United
States, supra* (overruling *Dukes v. United States, supra*).

*United States v. O'Dowd* (D. C.), 273 Fed., 600. *United States v. Burnside* (D. C.), 273 Fed., 603; or if the government has no part in the wrong or trespass, *Burdeau v. McDowell, supra;* or, if the occupant consents to search, *Dillon v. United States* (2 C. C. A.), 279 Fed., 639. *Bruner v. Com., supra. State v. Griswold, supra. Banks v. Com.,* 190 Ky., 330; 227 S. W., 455. *McClurg v. Brenton,* 123 Iowa, 368; 98 N. W., 881; 65 L. R. A., 519; 101 Am. St. Rep., 323. *Faulk v. State,* 127 Miss., 894; 90 South., 481. *State v. Fowler,* 172 N. C., 905; 90 S. E., 408. *Smith v. McDuffee,* 72 Or., 276; 142 Pac., 558; 143 Pac., 929; Ann. Cas., 1916D, 947. *State v. Atkinson, supra. State v. Harley, supra;* but waiver of right must be clear, *United States v. Lydecker* (D. C.), 275 Fed., 976; or if search is made pursuant to a lawful search or arrest, *State v. Mausert,* 88 N. J. Law, 286; 95 Atl., 991; L. R. A., 1916C, 1014. *Hughes v. State, supra. State v. Laundry,* 103 Or., 443; 204 Pac., 958; 206 Pac., 290. *State v. Reeves,* 112 S. C., 389; 99 S. E., 841; or where property seized under a valid search warrant is sought to be used in the prosecution of a suspected person for a crime other than that which may have been described in the affidavit for the warrant as having been committed by him, *Schenck v. United States* [*Baer v. United States*], 249 U. S., 47; 39 Sup. Ct., 247; 63 L. Ed., 470. *Gouled v. United States, supra. Cluett v. Rosenthall,* 100 Mich., 193; 58 N. W., 1009; 43 Am. St. Rep., 446. *Com. v. Tibbetts,* 157 Mass., 519; 32 N. E., 910; or in some jurisdictions to such articles as form a part of the *corpus delicti,* as distinguished from evidential articles, *Gouled v. United States, supra. United States v. Kelly* (D. C. E. D. N. C.), 277 Fed., 485. *State v. Simmons, supra. Sioux Falls v. Walser,* 45 S. D., 417; 187 N. W., 821. *Rippey v. State,* 86 Tex. Cr. R., 539; 219 S. W., 463; or where the officer is lawfully on the premises and observes the commission of some act in violation of the law, *United States v.*

*Murphy* (D. C.), 264 Fed., 842. *United States v. Camaroto* (D. C. Cal.), 278 Fed., 388. *United States v. Snyder* (D. C. W. Va.), 278 Fed., 650. *State v. Magnano,* 97 Conn., 543; 117 Atl., 550. *Bowling v. Com.,* 193 Ky., 642; 237 S. W., 381. *State v. Mausert, supra. Smith v. Jerome,* 47 Misc. Rep., 22; 93 N. Y. Supp., 202. *State v. Quinn,* 111 S. C., 179; 97 S. E., 62; 3 A. L. R., 1500. *State v. Harley, supra. State v. Guest,* 118 S. C., 130; 110 S. E., 112. *State v. McDuffie,* 120 S. C., 240; 113 S. E., 121. *State v. Hempley,* 120 S. C., 339; 113 S. E., 123. *Salt Lake City v. Wight,* 60 Utah, 108; 205 Pac., 900.

Consideration will now be directed to some of our own cases with a view of determining the rule in this State.

In 1 Greenleaf on Evidence, § 254a, the learned author thus states his conclusion on this question:

"It may be mentioned in this place that though papers and other subjects of evidence may have been illegally taken from the possession of the party against whom they were offered, or otherwise unlawfully obtained, this is no valid objection to their admissibility, if they are pertinent to the issue. The Court will not take notice how they were obtained, whether lawfully or unlawfully, nor will it form an issue to determine that question."

While some of the cases in this State lend considerable support to the view that a contrary rule obtains and that evidence thus obtained in an illegal manner should be excluded, it seems to be well settled now that the rule recognized is as stated in the foregoing extract from Greenleaf on Evidence.

In the case of the *State v. Atkinson, supra,* the room of the defendant was entered without any authority and under such circumstances as to make the entry a technical trespass, and certain pieces of newspaper possessing evidential force removed therefrom. In disposing of the objection to the competency of these pieces of paper which

were offered and received in evidence at the trial for the purpose of comparison with others found at the scene of the homicide to show that they were parts of the wadding used in defendant's gun, the Court, at page 371 of 40 S. C., at page 1024 of 18 S. E., 42 Am. St. Rep., 877) declares:

"The question now presented for our decision is not whether the persons who found the pieces of paper in the room of the defendant, John Atkinson, violated any of his legal rights by entering his room without authority, but whether the papers there found could be offered in evidence in this case. For while it may be possible that it was a technical trespass to enter his room without authority, yet it does not by any means follow that the pieces of paper there found could not be offered in evidence."

In this very properly observing the distinction suggested and in determining the question presented, the Court set out the language above quoted from Mr. Greenleaf and approved it as stating the correct rule on the subject.

In the case of *State v. McIntosh,* 94 S. C., 439; 78 S. E., 327, a shoe was taken from the defendant in jail and compared with a track at the scene of the crime, and it was held that such evidence was not compelling the defendant to become a witness against himself whether the shoe was taken lawfully or not. In support of this conclusion the Court cites the *State v. Atkinson* and the above extract from the work of Mr. Greenleaf, therein set out.

In the case of *State v. Harley, supra,* the parties were arrested and some evidence obtained that they had been violating the law against lotteries. Additional evidence was secured from a locked room, to which the accused had the key and which was opened by command of the officers, and the lottery paraphernalia was taken therefrom and subsequently offered in evidence against him.

While the Circuit Judge held, on appeal from the inferior Court in which the defendants were tried that the arrest was lawful and there was an apparently voluntary sur-

render of the key, thereby bringing the evidence under the well-recognized exception to the rule in those jurisdictions where such testimony is excluded, the Supreme Court declares:

"It does not appear that the books and papers in question were illegally seized, but, even if they had been so seized, they nevertheless would have been admissible in evidence," citing *State v. Atkinson, supra,* and *State v. McIntosh, supra.*

In the case of the *State v. Reeves, supra,* who was convicted of a violation of carrying on the business of an emigrant agency contrary to law, papers and documents found on him after he was arrested and taken from him by public officers were held admissible.

In the case of the *State v. Guest,* 118 S. C., 130; 110 S. E., 112, it was held that where officers stopped defendant's automobile, and upon inquiry he admitted that he had whisky therein, and voluntarily gave the officers the key to the rear compartment in which he had the whisky, evidence of his confession and the result of the search were admissible and did not violate his constitutional rights under the Fourth and Fifth Amendments to the Federal Constitution relating to the subjects of unreasonable search and seizure and compulsory self-incrimination.

In the case of the *State v. McDuffie,* 120 S. C., 290; 113 S. E., 121, it was held by our Court that when a search was made of the premises of the defendant without a warrant and equipment for the manufacture of liquor, and liquor was found and seized on the premises of another nearby, evidence of such articles was admissible and would have been so even if found on the premises of the defendant for the reason, in the first place, that, "the seizure of the 'outfit' for manufacturing alcholic liquors was made on the lands of another person," and, in the second place, because "no proceedings were instituted by the defendant to recover possession of the said articles."

The second reason assigned would indicate that our Court had sanctioned the rule announced in the case of *Weeks v. United States, supra,* as generally understood, but for the fact that in support of its conclusion it again sets out the extract from Greenleaf on Evidence, § 254, which is made the basis of the decision in the case of the *State v. Atkinson, supra,* and cites the latter case with the cases of *State v. McIntosh, supra, Sttae v. Harley, supra,* and *State v. Reeves, supra,* as being in harmony with *Weeks v. United States, supra,* and as sustaining the rule announced by Mr. Greenleaf, thereby regarding the latter case as not inconsistent with his conclusion. A careful analysis of our own cases will show that prior to the case of the *State v. McDuffie,* and except a reference thereto in the case of *State v. Green,* (S. C.), 114 S. E., 317, in discussing the Weeks Case, the admissibility of evidence illegally obtained has not in a single instance been made to rest upon the ground that there was no seasonable application made for the return of the articles before the trial. It cannot therefore be concluded that our Court intended to sanction the doctrine which is plainly and unquestionably declared in the Weeks Case, which, while recognizing the general rule "that a collateral issue will not be raised to ascertain the source from which testimony competent in a criminal case comes," yet, certainly establishes an exception to that principle unconditionally sanctioned in the case of *State v. Atkinson, supra,* and subsequent cases to the effect that, if there was an application for the return of the articles alleged to have been illegally obtained, and the application is granted, or erroneously denied, that such articles would be inadmissable in evidence. Such a doctrine is absolutely inconsistent with the rule stated by Mr. Greenleaf and every one of our cases resting thereon.

In the case of *State v. Hempley, supra,* it was held that a box of cartridges was properly admitted in evidence where obtained by officers on a search of defendant's living room

and trunk without a warrant. While the Court does say that the defendant aided in the search, and therefore did not object to it, yet the Court again quotes with approval the extract from Greenleaf on Evidence, set out in the *Atkinson Case,* and cites in support of its conclusion this latter case and the McIntosh, Harley, Reeves, and McDuffie Cases.

In the case of *State v. Green* (S. C.), 114 S. E., 317, where one of the defendant's cuff buttons was found at the scene of a rape, another cuff button taken from him by force for the purpose of comparison without a search warrant was held not inadmissible for that reason.

In the case of *State v. Kanellos* (S. C.), 115 S. E., 636, it was flatly held that the seizure of liquor in the possession of the defendant without a search warrant did not render such liquor incompetent as evidence, the Court resting the decision on the case of *State v. Green, supra.* This is the latest case on the subject so far as the Court is informed, it being decided January 11, 1923.

It was never questioned so far as the Court is aware, that the correct rule in such cases was as set out in the above cases until the case of *Blacksburg v. Beam,* 104 S. C., 146; 88 S. E., 441; L. R. A. 1916E, 714, was decided by our Court.

In the latter case the defendant lived in the county of Cherokee, a few miles out from Blacksburg. He made a legal purchase of whisky from the dispensary in Union, put this liquor in a trunk and checked it to Blacksburg. After its arrival there, and pending his passage from one depot to another, where he intended to take a train to King's Creek, toward York, the chief of police, without process, searched his person, secured the key to the trunk, opened it and seized the whiskey found therein. The defendant was placed under arrest.

In affirming the judgment of the Circuit Court which reversed the judgment of the Mayor, convicting the accused

of a violation of the town ordinance prohibiting the unlawful transportation of alcholic liquors, the Court, the lamented Mr. Justice Gage, speaking for a majority thereof, said, in part:

"In the instant case the possession of the liquor was the body of the offense; that fact was proven by a forcible and unlawful search of the defendant's person to secure the veritable key to the offense. It is fundamental that a citizen may not be arrested and have his person searched by force and without process in order to secure testimony against him."

In view of this apparently unequivocal language, taken with other expressions contained in the opinion, this decision was almost immediately misunderstood, in the light of subsequent interpretative comment thereon by our Court, and invoked to sustain legal positions which were held to be wholly unwarranted, and which, if sustained, would have practically defeated the administratioon of justice in many cases. It was this observation that, no doubt, led our Court to embrace the first opportunity presented to indicate the scope of the opinion and to remove all doubt as to the real ground upon which it rested.

In the case of the *State v. Quinn,* 111 S. C., 174; 97 S. E., 62; 3 A. L. R., 1500, it was held that (quoting substantially from syllabus) where policemen in an automobile, upon being stopped at a railroad crossing by a passing freight train, saw unconcealed intoxicating liquors in another car that had been likewise stopped, and upon such discovery arrested occupants of the car, the liquor was not discovered by means of a search in violation of Constitution, Art. 1, § 16, no force having been used, a search implying invasion and quest, which implies either actual or constructive force. Mr. Justice Gage also wrote the opinion in this case and distinguished the case from *Blacksburg v. Beam,* which was relied upon by the defendants to support their contention of an illegal search and seizure.

In the case of *State v. Zaglin,* 114 S. C., 265; 103 S. E., 510, Mr. Justice Watts administers a severe rebuke to the officers of the law "for searching a man's valise in his place of business without a warrant." The right to search and seize, however, does not seem to have been involved in that case. The only question raised by the single exception was whether a man who brought in the State one quart of liquor for personal use and a quart for each of two friends violated the quart a month law. It was held under the cases of *State v. Allston,* 107 S. C., 487; 93 S. E., 177, and *State v. Gens,* 107 S. C., 449; 93 S. E., 139; L. R. A., 1918E, 957, that such a transportation was not in violation of this law. The Chief Justice concurs on authority of these cases, and Mr. Justice Hydrick and Mr. Justice Fraser dissented, altogether.

In the case of *State v. Wagstaff,* 115 S. C., 198; 105 S. E., 283, the defendants were indicted for an assault and battery. It was held that evidence that a police officer, in the presence of and with the consent of the chief of police, snatched a grip from the prosecutor to search it for intoxicating liquors without a search warrant or reasonable cause to believe that it contained liquor, was sufficient to take the case to the jury.

It will be seen that this case is not in conflict with the *State v. Atkinson* and other cases, as it may be conceded, for the purpose of this inquiry, that the act of the officers was illegal. It is evident that this case does not decide or consider the question as to whether such liquor if any had been found would have been rendered incompetent as evidence because illegally obtained.

In case of the *State v. Green, supra,* the Court fully interprets the significance of the case of *Blacksburg v. Beam, supra,* in distinguishing the latter case from that under consideration in the following reference (*State v. Harley,* 107 S. C., 304; 92 S. E., 1034): "The case of *Blacksburg v. Beam* [citation] did not rest so much upon the question

whether there was a violation of Section 16, Art. 1, of the Constitution, which provides that the people *shall be secure from unreasonable searches or seizures,* or Section 17, Art. 1, providing that no person shall be *compelled to be a witness against himself,* as upon the principles announced in *State v. Rookard,* 87 S. C., 442; 69 S. E., 1076, and *State v. Green,* 89 S. C., 132; 71 S. E., 847." (Italics added.)

These cases simply held that the keeping in possession of liquors for a lawful purpose which were obtained lawfully was not in violation of the law, and that an instruction that it was unlawful to have liquors in possession in any quantity in a prohibition county was erroneous.

This was, indeed, nothing more than a proper recognition of the very significant language of Mr. Justice Gage in the case of *Blacksburg v. Beam,* when he said: "So that it so happened one town in the same judicial circuit sold the whisky to the defendant for a profit, and another town took it from him, by force and flung him in jail for having it in his possession. We have no doubt but that a conviction under the recited circumstances is unlawful." 104 S. C., 148; 88 S. E., 442; L. R. A. 1916E, 714.

The respondent relies largely on the case of *Weeks v. United States, supra,* to support his contention. It will be observed, however, that our Court in the recent case of *State v. Green, supra* which was fully recognized and approved in the case of *State v. Kanellos, supra,* the latter being as already shown clearly against the position of respondent, expressly declared that there was no essential conflict between the Green and Weeks Cases. In the discussion of the relation of the two cases, Mr. Justice Fraser, in the former case, 114 S. E., 319, says: "We see no conflict. The rule contended for would paralyze the administration of justice in many cases. The pickpocket could never be convicted. You know you had your pocketbook just before you met him. You know you did not have it just after he passed. You seize him—call an officer. The thief is searched, and the pocketbook is found on him. The only possible evidence

of his guilt is his immediate possession of the stolen property, and yet we are asked to hold that he must go free, because he was arrested and searched by force without a warrant. That is not the law in the federal or state Courts."

Of course the Court cannot conclude that it was the purpose of our Supreme Court to destroy its conclusion in the Green Case, obviously against respondent's contention, by approving an antagonistic principle in the Weeks Case and this Court must be bound by the interpretation placed on the Weeks Case by the Supreme Court of the State.

Again, it is plain that, if the rule excluding such testimony was recognized in its utmost strictness in this State, it could not avail the respondent, as this case clearly falls within certain exceptions to the rule which are uniformly recognized.

The testimony shows that the violation of the law was open and that the officer, Williams, was standing in a position where he could observe the entire transaction and did see the commission of the offense—the sale of the liquor, and that upon request the respondent produced the check, tore it into pieces and threw them on the floor, which the officer picked up. The most rigid application of the rule, therefore, would not require a search warrant to make unobjectionable the evidence offered in this proceeding, as already indicated upon the support of numerous authorities.

As to the fourth contention, the case of *Butts v. United States,* 273 Fed.,35; 18 A. L. R., 143, cited by respondent's attorney, the Court does say:

"The first duties of the officers of the law are to prevent, not to punish, crime. It is not their duty to incite to and create crime for the sole purpose of prosecuting and punishing it. Here the evidence strongly tends to prove, if it does not conclusively do so, that their first and chief endeavor was to cause, to create, crime in order to punish it, and it is unconscionable, contrary to public policy, and to gasoline and kerosene in close proximity and that the de-

*mission of an offense of the like of which he had never been guilty, either in thought or in deed,* and, evidently never would have been guilty of if the officers of the law had not inspired, incited, persuaded, and lured him to attempt to commit it." (Italics added.)

It will be clearly observed, however, that this case is not applicable to the present case. In the latter it is not sought in the proceeding to "punish" the respondent for any act growing out of this transaction, but simply to ascertain if a pending judgment must be enforced; nor can it be said that the State seeks now to punish the respondent for an offense "the like of which he had never been guilty, either in thought or deed."

However this may be, the question is settled against the contention of respondent by the cases of *Spartanburg v. Willis,* 103 S. C., 331; 88 S. E., 16, and *State v. Batson,* 107 S. C., 460; 93 S. E., 135.

It is sufficient to observe in reply to the fifth contention that, while the grand jury in the Federal Court may have returned no bill on the indictment charging the respondent with interfering with officers in the discharge of their duty, yet a true bill was found, as the Court understands from the record, on the indictment charging a violation of the liquor law involving the identical transaction which is now pending for trial in the Federal Court. These two indictments necessarily involve different phases of the transaction, and the fact that the officers were not obstructed in the discharge of their duty would not logically imply that the respondent did not have in his possession alcoholic liquors for an unlawful purpose. And whatever weakness may be ascertained, judicially, to characterize one phase of the transaction is offset by a *prima facie* judicial determination of the strength of the other phase.

In regard to the last contention of the respondent, involving the sufficiency of the testimony adduced by the State, it is apparent that the most casual review thereof dis-

closes a violation of the terms and conditions of this sentence.

Wherefore, it is ordered and adjudged that the return to the rule issued herein against the respondent is not sufficient in law or fact, and the prayer thereof that the same be discharged must be denied.

It is ordered and adjudged further that the terms and conditions embodied in the sentence and judgment of this Court pronounced by the Honorable R. W. Memminger, Presiding Judge, against the respondent, in the Court of General Sessions of Charleston County, on the 22d day of June, 1916, as fully hereinbefore set out, have been violated by the said respondent, and that the suspension of sentence as therein imposed shall immediately cease and be vacated and revoked, and, further, that the said Oscar Maes, the respondent herein, shall forthwith, without any delay or stay of the execution of this order, suffer, undergo, and execute the full sentence and judgment of the said Court; that is to say, that he be confined at hard labor upon the public works of the county of Charleston for the remainder of the said sentence, namely, four months, or for a like period, in like manner, in the State penitentiary.

Ordered further, that such action be taken by the sheriff of Charleston county, as may be necessary to the immediate execution of this order.

*Mr. George F. VonKolnitz,* for appellant, cites: *Suspended sentence* 27 Stat., 773; 115 S. E., 742; *Circuit Judge may not decide whether crime has been committed without aid of jury;* 107 S. C., 414: *Search and seizure;* 232 U. S., 394; 251 U. S.,385; 255 U. S., 298; 277 Fed., 939.

*Mr. Thomas P. Stoney, Solicitor* for the State, cites: *Defendant not entitled to jury trial on question of violation of suspended sentence;* 107 S. C., 345; 108 S. C., 455; 109 S. C., 406; 114 S. C., 445; 107 S. C., 413; 115 S. E., 744. *Evidence obtained in unauthorized search may be used against accused;* 40 S. C., 363; 107 S. C., 304; 94 S. C.,

339; 1 Greenl. Ev., Sec. 254; 112 S. C., 389; 120 S. C., 290; 110 S. E., 212; 114 S. C., 317; 115 S. E., 636.

December 7, 1923.

The opinion of the Court was delivered by Mr. Justice Cothran.

The elaborate and lucid decree of Judge Smith in this case, renders further discussion of the questions raised a work of supererogation. For the reasons assigned by him, the judgment is affirmed. Let the order be reported.